Our second case is 22-4726 U.S. v. Darosa. Mr. Winthrop. May it please the court. I'm Sam Winthrop and I represent the appellant Valentino Darosa. Our first issue is whether the defendant's fingerprint on an easily movable object present at the crime scene established probable cause to search. The Fourth Amendment states that no warrant shall be issued but upon probable cause supported by oath or affirmation and particularly described in the place to be searched and the person to be seized. A review of probable cause requires practical common-sense decision or sworn testimony that there is a fair probability that evidence will be found in a particular place. In this case, your honors, we have a fingerprint that was left on a notebook at a crime scene. The allegations were that a suspect committed a Hobbs Act robbery at a business establishment in North Carolina that he had on his person a notepad and that during the commission of the the suspect left the notepad at the establishment and as he left the police came and they found the notepad at the site. They sent off for analysis and it came back as a hit to the appellant. Based on that, they sent the notepad to the lab. They then get it when it comes back to Valentino then get an arrest warrant. Once my client is arrested, they then apply for a search warrant. In the search warrant, the affidavit states primarily they rely on a fingerprint on a notepad that was left at the scene. I think you need to be a little broader in your characterization. The affidavit said the defendant left the notepad. That's correct. The defendant tied him up and the defendant stole the stuff and the notepad that the defendant left had a fingerprint matching the defendant in this case, DeRosa. Now from that, the magistrate accepts that the defendant himself left the notepad but that isn't the end of it. You can challenge whether that was a sufficient fact or a frank on some kind of challenge to the affidavit but of course we have the evidence that the suspect came in and read from the notepad. He read an address and he read it incorrectly. He had the wrong town and he read that to the store owner and the store owner commented on it and when they picked up the notepad, it had that same misstated address on it from which he had read. I don't know how it could be more clear that the fingerprint is linked to the guy who came into the store, read from the notepad and left the notepad, read incorrect information. The notepad that was found had that incorrect information and of course there was the testimony that the notepad was not there before he left but that isn't the issue. The issue is what did the affidavit say and the affidavit said the defendant left the notepad and the notepad had a fingerprint and the fingerprint matched the cause. But we don't know that the defendant was the suspect. They made the conclusion. Sure they did. They came in the store and they said the defendant, you can say the man, the man came into the store, he robbed the store, he tied me up, he read from a notebook, the defendant left his notebook in there and a test showed that the man's fingerprint was on the notepad. The fingerprint happens to match DeRosa. Judge Niemeyer, this is not a loosely left movable object that is found out of context. This is the notepad left by DeRosa. So if I leave the courthouse today with a notepad in my hand, my thumbprint is right there, I leave the courthouse, I get robbed at gunpoint, the person who robs me is wearing gloves, remember that the suspect in gloves the whole time, commits the robbery, they then leave this notepad. So you read me a couple of cases off of there and I say that's the wrongly stated and you say the date on one of those cases is 2022 and I say no it's 2023. We have that dialogue, you leave here, I pick up the notepad and I see a reference to 2022 and we have that dialogue. Can't I link that notepad to you? That is some evidence but that could surely be the problem in this. Somebody, a stranger came in and wrote down the case and put the wrong date on it after the fact. But we're making an assumption that DeRosa is the person that did all this. No, the man did it. The man who robbed the price, tied him up, came in and read from a notepad. The man did. Right. And on the notepad he misread an address. He read an address and it was correct, it was the wrong town. They found, after he left, they found that notepad there. The guy says that was the notepad he had. It wasn't there before he came and on that notepad is the information with the wrong address that he alluded to during the commission of the crime. So now the police go back and say that notepad is linked to whoever came in that store and read from it and they find that his name was DeRosa and they charged him. Now is it probable cause that it was DeRosa that was in there with that notepad? I would argue that there's, that still is not substantial evidence. You still have to show a fair probability because it could have been anybody. DeRosa could. Anybody what? Give me a hypothetical. DeRosa could have been implicated. Perhaps DeRosa had a girlfriend. You know from the case that the girlfriend pawned certain items that were allegedly taken from this establishment. How do we know based on the description? Because if you look at the description, the description was a heavyset six-foot black male. I believe the evidence will be that's not the description. Give me a hypothetical that would give, that would implicate anybody else. Here we have the man who robbed the store and tied up the store owner was reading from a notebook while he was doing that. We have that evidence. That's pretty clear. He was asking questions about an address, reading the address from the notebook. The address was misstated and the guy corrected him or said it's the wrong town. And then they found a notebook with that information on it and the store owner says the notebook was not there before this man came in. So now is that probable cause that the man who tied him up is the man who had that notebook? I would still contend that's not probable cause. Well you know when you look at it, the cases that deal with these fingerprint situations and movability of the objects, they're primarily cases on the merits. They're dealing with sufficiency of evidence. You are dealing with a fair probability situation. That's where Judge Niemeyer is going with this. And you would agree that probable cause is convicted, wouldn't you? Your Honor, I would agree. And so what makes this a different case than those cases, in cases when there's dealing with well a fingerprint alone on a movable object is not going to be enough. You walk in and then they do a scour of the whole room and they find some object that can, a ball that's laying around, it has a fingerprint of an individual and then of course it's not enough. You need to have some more evidence to be able to do it. What you have as Judge Niemeyer is alluding to is you've got a surveillance camera that's showing this, that individual, call him name or whatever, has a notebook. He then reads an address that is almost the address, but he misses one word in there that's wrong, but it's the address of I guess brother-in-law of whom it is supposed to be. And that notebook is sitting right there with that address on it, in front of it, and it happens to have an identifying fingerprint of the defendant. It would be pushing it, I think, to say that that matches the scenario where you walk in. Understandably, you don't. Now, to be fair, even if you get there, you would have a hard time getting beyond the good faith exception on this, given the fact that that officer could have, and I would say he should have, put more facts in that affidavit. There's no question. He had them. He had more facts that he could have stuck in that affidavit and made it clear, but the good faith exception, whether we like it or not, is there square on his face. Even if we went in your direction, I don't see how you get beyond the good faith exception on this. Tell me, how would you? I contend you still have a bare-boned affidavit. I appreciate what the court is telling me. Granted, but the good faith exception deals with the fact that this officer is acting and he has all these other facts in there. You know that the videotape is showing an individual, shows how he's dressed, shows the notebook. You have the testimony dealing with, you know, what this individual is doing. All those facts could have been added in there and it would have probably made your job even more difficult to talk about the warrant, but at the very least, the case law has pretty much gone in that direction. That looks like good faith to me. Tell me why it would not be. Because the affidavit still made the reference that this is the defendant and this defendant left that notebook there and I would say that was a misstatement of fact and that would be an exception to the good faith exception. Well, the magistrate judge doesn't know it's a mistake of fact. Magistrate judge, the issuing, the person that issued the warrant is told that the suspect left the notebook and based on that, with the fingerprint of the suspect on it, issued a warrant. Your argument is that that fact is an incorrect fact that the defendant left the book? I'm saying the suspect, the person left the book. Yes. I'm still saying there has to be that connection. There was. The affidavit said the person left the book. Subject of the sentence was the defendant or the suspect, the person that came in, left the book. Well, if the person who commits a crime left the book and that's what the affidavit says and then that book is linked to DeRosa with his fingerprint on the book, it seems to me that's the place to look with the warrant, to search. My next argument, sir. I take the court's exception with my argument. I understand and I gather your argument basically has to address the facts behind that statement because the statement itself is plenty sufficient, which is the book, the suspect left the book. So you have to go back behind it and say, did the officer have enough evidence, a reason to say the book that the defendant was the one who left the book? And the argument there is all this evidence we talked about that he was seen reading from book, read from the book, that the store owner talked about what he said, asked about an address, had the wrong address and the notebook had that wrong address and then that book wasn't there before he came. That's the evidence that the officers had. The last argument I'd like to address is the jargon and testimony that was allowed to be admitted into this court. As we alleged and I believe our fourth argument, there was jail transcript calls that were admitted into evidence. The officer, who was not a party to the conversation, who did not listen contemporaneously to the conversation, was allowed to interpret three words from the transcript. The words were lick, hammer, and bread. He, as a lay witness, testified. That's when bread, we all know that's what it is. Lick and hammer, yeah, you'd have to educate me on that. And that's the whole point. If you have to educate the juror, then the officer should have been qualified as an expert under Rule 702. The trial attorney did request that this be excluded. The prosecutor allowed the officer to testify as a lay witness and he gave an opinion testimony as to something that required specific knowledge. The Walker case in this court said, if an officer is going to testify about the meaning of jargon, he has to either be a party to the conversation or he has to be qualified as an expert to use his expert training and experience. Was there any dispute that he could have been qualified as an expert? Any dispute that he could have been qualified as an expert? Well, the fact that the attorney objected, had they qualified him as an expert, then the trial attorney could have issued a voir dire and they could have determined whether he was an expert. I understand the trial testimony was he had been involved in many cases and testified in many cases, but you still have to give the attorney a chance to do his job to determine whether, in fact, he should be qualified as an expert. The brief of the government makes the assumption, well, was there an objection to that? Was there an objection? I believe there was, yes. There was an objection to that. And what did the objection say? I didn't get a chance to voir dire? Well, I think the objection was he objected to the testimony. I don't know if he requested a voir dire. On reading those passages in context, it seems to me two of the three were any person on the bread referring to money. The lick, I think the officer actually got it wrong. He was trying to from context figure out what lick. I think the guy said, I don't care a lick or something, it doesn't make any difference. And that's a normal common understanding. But if you read the statement, the way the officer gave it and whether the common understanding doesn't make any difference to the meaning of the sentence, because basically the sentence was referring to that's irrelevant. I don't quite know where the real harm is on this. It's a dicey line between an officer who learns the street language because he's dealing with it regularly and expert opinion. There's no dictionary. Every one of these conversations is contextual. So, I mean, we had a case where the drugs were stored in a dealership, car dealership, and they get on the phone and they said, well, how many do you want that car? And how much do you want to pay? And so the car was referring to the drugs. I mean, these types of things are picked up by officers as a technique in understanding what's going on. It's a dicey question. But my whole question to you is, does it mean a heck of a lick in this case? Well, so if you're dealing with a robbery case and your detective, who was not a part of the conversation, is able to tell the jury a lick means a robbery, then the officer just told the jury that the appellant admitted to a robbery on a jail call. And I think that's hard to overcome, and you can't argue that's harmless error. All right. Thank you, counsel. Ms. Wray. May it please the court, Amy Wray for the United States. Addressing first the Fourth Amendment issue, I would note that this court has described the burden for probable cause to be something more than a bare suspicion. In Gondras Medrano, just 2021, it are circumstances that warrant a suspicion. So it's not a high burden. It's not nearly the burden that this court considered in those cases that dealt with the Bonner and Corso and the ones that Mr. Widener has cited that talk about whether it's sufficient evidence. So in this case, there was more than enough information. I mean, I would concede that the warrant itself, the four corners of the warrant, could have been beefed up with more information that the officer had. But even on the four corners of the warrant, there's enough to merit further investigation, and that that's all that's required. With respect to good faith, I note that the Supreme Court in Haring says we have to look at the flagrancy of the officer's conduct. Is there any purpose to the exclusionary rule in a case like this, where at most the officer could have and maybe should have put a little more information in the four corners of the affidavit? The exclusionary rule, the purpose of that simply wouldn't be served by suppressing this evidence. I'll move to the evidentiary issue, unless your honors have further questions about the Fourth Amendment issue. So with respect to the slang, it's not reversible error at a minimum, because this officer would have been class, would have been easily qualified as an expert if the United States had sought that. He had investigated, testified that he had investigated over 350 robberies and been involved in at least over a thousand other investigations related to robberies. So he would have been, and this court's decision in Smith in 2020 and others makes clear that as long as someone who testifies under Rule 701 could have been qualified under Rule 702, the error is harmless. The other reason the error is harmless is because there was overwhelming evidence against Mr. DeRosa in this trial. We didn't need the jail calls and we certainly didn't need the definitions of bread lick or robbery. I do want to say that I find the case law on 701 to be a little perplexing. On the one hand, some cases seem to draw a really clear line that you can't testify, a police officer can't testify to slang, but other decisions like Smith suggest that if it's something the officer knows, if it's a modus operandi and an officer just knows that it's okay, I'm going to suggest to the court that even I know what lick means, I know what hammer means in these contexts, and everyone has known what bread means since the 60s and the 70s. So I do believe that it's a fair, it's not arbitrary or capricious for a, and even in hip-hop lyrics and true crime, we talk about licks and hammers. So that I would just suggest to the court is really close, but at the minimum it's not reversible error because we had plenty of evidence. I don't know, there are two other issues that the defendant presented in his brief that he didn't argue sufficiency of the evidence. I don't think I need to say a lot about that. There was more than enough evidence to support his conviction and the district court reasonably declined to give the instruction that the defendant asked him to under the Strayhorn case essentially, that fingerprints on a highly movable object are suspect and highly questionable in terms of their evidentiary value. Judge Conrad reasonably instructed the court that it should use its common sense and the defendant was free to argue that point in argument, which he did. So if this court has no questions, the United States requests this court affirm the judgment of the district court. Thank you. Thank you, Ms. Ray. Mr. Winthrop? I would just reiterate that it's our contention that the search warrant was insufficient, but I won't dwell on any of my arguments I've previously made. Thank you, sir. All right, we'll come down and greet counsel. You want to move on? And move on to our third case.
judges: Albert Diaz, Paul V. Niemeyer, James Andrew Wynn